NOT RECOMMENDED FOR PUBLICATION
File Name: 26a0349n.06

Case No. 26-3101

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
Aug 04, 2026
KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| DANIEL TASCARELLA, | ) | |
|     Plaintiff-Appellant, | ) | |
| | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE NORTHERN |
| APTIV US GENERAL SERVICES | ) | DISTRICT OF OHIO |
| PARTNERSHIP, aka Aptiv Corporation, | ) | |
|     Defendant-Appellee. | ) | OPINION |
| | ) | |

Before:  BATCHELDER, MOORE, and THAPAR, Circuit Judges.

**ALICE M. BATCHELDER, Circuit Judge.**  Plaintiff-Appellant Daniel Tascarella appeals the district court's denial of his motion for a preliminary injunction prohibiting Defendant-Appellee Aptiv US Services General Partnership from terminating his employment or interfering with his employment benefits.  Aptiv moves to strike Tascarella's reply brief before this court, claiming that it contains facts unsupported by the record.  Tascarella disputes that motion.

Because Tascarella has not demonstrated that he faces irreparable harm in the absence of a preliminary injunction, he is not entitled to that "extraordinary remedy."  *See D.T. v. Sumner Cnty. Schs.*, 942 F.3d 324, 327 (6th Cir. 2019) (citation omitted).  And while many of the contested facts in Tascarella's appellate reply brief appear to be at least facially connected to the record (albeit mostly in reference to his declaration in support of his reply in the preliminary-injunction briefing), the propriety of his appellate reply brief does not alter our disposition of this appeal.  We **affirm** the district court's denial of Tascarella's motion for a preliminary injunction and **deny as moot** APTIV's motion to strike his reply brief.

**I.**

On September 12, 2025, Aptiv offered Tascarella employment as the plant manager of one of its Ohio manufacturing facilities. Tascarella, who was particularly attracted to Aptiv's ostensibly immediate vesting of employment benefits, accepted that offer and began his employment on September 29. He lodged at a local hotel and worked for one or two days at the plant. Tascarella attests that, after his second day of work, he began experiencing severe medical symptoms that he had "not experienced . . . before": extreme dizziness, an apparent temporary loss of consciousness, vomiting and defecating blood, and a dangerous drop in blood pressure. Declaration of Daniel Tascarella, R. 31-1, PageID 759–60. According to Tascarella, he spent ten days hospitalized in an intensive care unit in Ohio, underwent surgery, and then rejoined his wife at their home in Alabama. He says that his doctor has diagnosed him with liver cirrhosis, portal hypertension, hepatic encephalopathy, and stage-four liver failure, and has recommended that he be placed on a liver-transplant list.

Tascarella contends that he filed a claim for short-term disability benefits with Aptiv's administrator for the program, which approved him for benefits from October 1, 2025 to April 7, 2026. He claims to have told Aptiv on December 12, 2025, that he would need to extend his medical leave of absence for an indefinite length of time. In response, Aptiv emailed him a letter dated December 12, announcing its intention to terminate his employment on December 31, 2025. Stipulated Termination Letter, R. 1-1, PageID 121. Aptiv explained its choice as being necessary due to the "critical" nature of the plant-manager position and the "undue burden" of leaving that position vacant for an indefinite, months-long period. *Id.* Along with the termination letter, Aptiv proposed a severance agreement which, according to Tascarella, provided benefits that paled in comparison to his full employment benefits.

2

Tascarella sued Aptiv (along with other parties now dismissed from the proceedings) in Ohio state court, "asserting six claims: Employee Retirement Income Security Act (ERISA) interference, promissory estoppel, fraud in the inducement, unilateral contract, disability discrimination, and unlawful retaliation." *Tascarella v. Aptiv US Gen. Servs. P'ship*, No. 4:26-CV-0024, 2026 WL 294962, at *2 (N.D. Ohio Feb. 4, 2026). He also moved for a temporary restraining order (TRO) and preliminary injunction. *Id.* The state trial court issued an *ex parte* TRO before Aptiv removed the case to federal court. *Id.* The district court requested briefing on the preliminary-injunction motion, set the motion for a hearing, and, with the parties' consent, extended the TRO through that hearing date. *Id.* at *2–3. After conducting that hearing and considering the parties' arguments, the district court denied Tascarella's motion, finding that he failed to meet his burden on any of the preliminary-injunction factors. *Id.* at *3–6. Tascarella appealed and sought an injunction pending appeal from both the district court and this court, both of which were denied. *Tascarella v. Aptiv US Gen. Servs. P'ship*, No. 4:26CV0024, 2026 WL 574922, at *1 (N.D. Ohio Mar. 2, 2026); *Daniel Tascarella v. Aptiv US Gen. Servs. P'ship,* No. 26-3101 (6th Cir. April 7, 2026) (order). We now consider the merits of his preliminary-injunction appeal.

## II.

"We review a district court's decision to deny a preliminary injunction under an abuse-of-discretion standard. But that can be misleading. While we apply deferential review to a district court's fact findings and its ultimate judgment about whether to grant the preliminary injunction, we treat a mistake of law as an abuse of discretion." *PCC Airfoils, LLC v. Daugherty*, 176 F.4th 509, 512 (6th Cir. 2026) (citations omitted). In effect, "we review the law de novo, the facts for clear error, and the district court's remedial decision for an abuse of discretion." *United States*

*Sportsmen's All. Found. v. Centers for Disease Control & Prevention*, 167 F.4th 813, 818 (6th Cir. 2026).

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). "After weighing the four factors against one another, a court may grant a preliminary injunction only if a plaintiff has made 'a clear showing that [it] is entitled to such relief.'" *PCC Airfoils*, 176 F.4th at 513 (alteration in original) (quoting *Winter*, 555 U.S. at 22).

But a plaintiff may not proceed if he has "no likelihood of success on the merits." *Id.* (citation omitted). And the irreparable-harm factor is "indispensable." *D.T.*, 942 F.3d at 327. "[E]ven the strongest showing on the other three factors" will not overcome a lack of irreparable harm because "[i]f the plaintiff isn't facing imminent and irreparable injury, there's no need to grant relief *now* as opposed to at the end of the lawsuit." *Id.* at 326–27. To overcome this threshold, the plaintiff must demonstrate "the *existence* of an irreparable injury" that is "both 'certain and immediate,' not 'speculative or theoretical.'" *Id.* at 327 (citation omitted). But he need not establish this factor by "clear and convincing evidence." *PCC Airfoils*, 176 F.4th at 513. Nor does the "clear showing" required by *Winter* apply to the irreparable-harm (or any other) factor individually. *Id.* at 514. This "phrase clarifies that, on balance, the four preliminary injunction factors must clearly weigh in the plaintiff's favor to qualify for injunctive relief." *Id.* No more; no less.

At the outset, we acknowledge that the district court erred when it required Tascarella to prove his case "by clear and convincing evidence." *Tascarella*, 2026 WL 294962, at *3. While

this error alone can warrant reversal (indeed, we took this path in *PCC Airfoils*), "we may affirm the district court's judgment on any ground supported by the record." *Mockeridge v. Harvey*, 149 F.4th 826, 832 (6th Cir. 2025) (citation omitted); *see also Memphis A. Philip Randolph Inst. v. Hargett*, 978 F.3d 378, 385 (6th Cir. 2020) ("Under the abuse-of-discretion standard, this court '*may* reverse the district court if it improperly applied the governing law, used an erroneous legal standard, or relied upon clearly erroneous findings of fact.'" (emphasis added) (citation omitted)). As explained below, Tascarella has not demonstrated irreparable harm, even when his arguments are viewed under the proper light. This fact dooms his motion. *D.T.*, 942 F.3d at 327.

"A plaintiff's harm from the denial of a preliminary injunction is irreparable if it is not fully compensable by monetary damages." *Overstreet v. Lexington-Fayette Urb. Cnty. Gov't*, 305 F.3d 566, 578 (6th Cir. 2002). And the alleged harm "'must be both certain and immediate,' not 'speculative or theoretical.'" *D.T.*, 942 F.3d at 327 (citation omitted). The harm alleged in Tascarella's motion for a preliminary injunction—termination of his employment and employment benefits—is "quintessentially reparable by money damages." *Overstreet*, 305 F.3d at 579 (quoting *Minnesota Ass'n of Nurse Anesthetists v. Unity Hosp.*, 59 F.3d 80, 83 (8th Cir.1995)). Generally, "[t]he fact that an individual may lose his income for some extended period of time does not result in irreparable harm, as income wrongly withheld may be recovered through monetary damages in the form of back pay." *Id.* (citing *Sampson v. Murray*, 415 U.S. 61, 90 (1974)). So too here.

The Supreme Court has "recognize[d] that cases may arise in which the circumstances surrounding an employee's discharge, together with the resultant effect on the employee, may so far depart from the normal situation that irreparable injury might be found." *Sampson*, 415 U.S. at 92 n.68. But those cases are "extraordinary" and do not arise merely from "an insufficiency of savings or difficulties in immediately obtaining other employment—external factors common to

5

most discharged employees and not attributable to any unusual actions relating to the discharge itself—. . . however severely they may affect a particular individual." *Id.* We have stated that an employer's inability to reinstate or compensate the employee may be one of those "extraordinary" circumstances. *See Aluminum Workers Int'l Union, AFL-CIO, Loc. Union No. 215 v. Consol. Aluminum Corp.*, 696 F.2d 437, 443 (6th Cir. 1982). But we see no indication from the record that Aptiv would not be able to reinstate or compensate Tascarella should he prevail on the merits of his claims. Salaries, short-and-long-term-disability benefits (which, according to Tascarella, are a prorated amount of his salary), life-insurance payments, and retirement benefits are all denominated in terms of money. And denied or withdrawn health-insurance coverage, which is ultimately monetary in nature, generally can be remedied with damages. Without more, a delay in compensation does not constitute irreparable harm.

Tascarella argues that there is more, but none of his arguments demonstrates an abuse of discretion by the district court. First, he asserts that Aptiv's termination of his long-term-disability benefits and life-insurance policy might render him ineligible for reinstatement of those benefits. We question at the outset whether this harm is "certain and immediate" rather than "speculative or theoretical." *See D.T.*, 942 F.3d at 327 (citation omitted). Regarding the long-term-disability policy, Tascarella says that "under Aptiv's interpretation of the plan," he "might" become permanently ineligible for reinstatement, Br. of Appellant at 56, and further notes that "[y]ou *generally* cannot reinstate a lapsed private disability policy after a disability occurs," Reply Br. of Appellant at 11 (emphasis added). He also asserts that it would be "impossible" to reinstate his life-insurance policy should he unfortunately die. *Id.* at 12. Even if these scenarios present sufficiently certain forms of harm, they are indisputably compensable with money damages. Should Tascarella (or his estate) succeed on the merits of his claims against Aptiv, the district court

can award him damages in the full amount of what he would have received under the terminated disability and life-insurance policies.

Second, Tascarella contends that the district court erred because he faces significant medical bills and an inability to obtain other income and benefits, both due to his liver condition. In support of his argument, he analogizes his case to our unpublished decision in *Welch v. Brown*, 551 F. App'x 804 (6th Cir. 2014). There, we found no clear error in a district court's finding that a group of retirees faced irreparable harm when their former employer changed their health-care benefits. *Id.* at 806–07, 813. In making this finding, the court repeatedly emphasized that the changes in benefits equated to a lack of access to medical care. *Id.* at 813 (finding that the change would force plaintiffs "to have to either 'forgo necessary medical care or give up basic necessities,'" to stop receiving care from doctors they had seen for decades, and to be unable "to afford all of their prescribed medications").

Tascarella also points us to our recent unpublished order in *Izquierdo v. Wipro Ltd.*, where we similarly found irreparable harm when the plaintiff asserted that "without his health insurance benefits, he [was] unable to obtain several medications that [we]re necessary to treat his HIV, diabetes, and MRSA." No. 25-3931, at *2–3 (6th Cir. Dec. 17, 2025) (order). But while *Izquierdo* noted that "the loss of health insurance may constitute *per se* irreparable harm . . . where the plaintiff alleges a critical need for healthcare," *id.* at *5 (quoting *Farnham v. Campari Am., LLC*, No. 5:25-CV-275-CHB, 2025 WL 2423328, at *2 (E.D. Ky. Aug. 21, 2025)), this was in the context of the plaintiff's *also* asserting "financial hardship." *See id.* (quoting *Carabillo v. ULLICO Inc. Pension Plan & Tr.*, 355 F. Supp. 2d 49, 54 (D.D.C. 2004), *aff'd sub nom. Carabillo v. Ullico Inc*, 198 F. App'x 1 (D.C. Cir. 2006)).

But these cases do not help Tascarella. *Welch* and *Izquierdo* are nonbinding; *Welch* applied a deferential standard of review to the district court's finding that there *was* irreparable harm in that case; and, at any rate, both cases are distinguishable. The district court found that Tascarella is eligible for Medicare and Social Security benefits, as well as continuation of his Aptiv health-insurance policy under the Consolidated Omnibus Budget Reconciliation Act of 1985 (COBRA), and we find no clear error in that factual finding. And, unlike the *Welch* and *Izquierdo* plaintiffs, Tascarella "has not pled a financial barrier to [his] obtaining [the] coverage" or healthcare that he needs. *Tascarella*, 2026 WL 294962, at *6. In his appellate brief, Tascarella alleges that "both insurance coverages are necessary to cover his costs," Br. of Appellant at 56, but he provides no citation to the record. As far as we can tell from his appellate briefing, his only support for this assertion comes from his own sworn declaration, in which he claims that without Aptiv's benefits, he and his wife "will suffer great undue hardship and be placed at great risk of being unable to obtain needed medical treatment." R. 31-1, PageID 762. At worst, this is a legal conclusion masquerading as a factual allegation. At best, it is an unspecific, unsupported, and theoretical speculation. *See D.T.*, 942 F.3d at 327 ("[A]n injury 'must be both certain and immediate,' not 'speculative or theoretical.'" (citation omitted)). Without more, we cannot say that the district court clearly erred in its factual finding that Tascarella "is not in danger of losing healthcare coverage if injunctive relief is denied." *Tascarella*, 2026 WL 294962, at *5.

Finally, Tascarella alleges that Aptiv's termination of his benefits will cause his wife irreparable harm. Assuming Tascarella can rely on his wife's alleged injury in the first place, we find no clear error in the district court's discounting of this argument, too. Tascarella's wife is eligible for healthcare coverage continuation under COBRA. She also became eligible for Medicare in the time after the district court denied the preliminary-injunction motion. And

8

Tascarella's assertion of "great undue hardship" and a "great risk of being unable to obtain needed medical treatment" is unavailing here, too. *See* R. 31-1, PageID 762. In sum, we cannot say that the district court abused its discretion in finding no irreparable harm.

**III.**

Tascarella might turn out to be correct on the merits of his claims. But a "preliminary injunction does not follow as a matter of course from a plaintiff's showing of a likelihood of success on the merits." *D.T.*, 942 F.3d at 327–28 (quoting *Benisek v. Lamone*, 585 U.S. 155, 158 (2018)). Without a showing of irreparable harm, neither we nor the district court can grant him interim relief. We affirm the district court's decision and deny as moot Aptiv's motion to strike Tascarella's reply brief.